# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2010

No. 08-70046

Charles R. Fulbruge III
Clerk

JEFFREY DEMOND WILLIAMS,

Petitioner–Appellant

v.

RICK THALER, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-02945

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Jeffrey Demond Williams appeals the district court's denial of a certificate of appealability ("COA") on his Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment, which raised claims of actual innocence and ineffective assistance of counsel ("IAC") at sentencing ; and his Federal Rule of Civil Procedure 60(b) motion for relief from judgment, which accused the State of discovery violations for not serving him subpoenas duces tecum ("SDTs") that it issued. The district court held that Williams had not made a substantial showing of a denial of a constitutional right, and we agree. We therefore affirm the district court's denial of a COA on Williams's two motions.

No. 08-70046

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

In May 1999, Houston Police Officer Tony Blando drove an unmarked Jeep Cherokee around the parking lot of a hotel looking for stolen cars.  Blando wore plainclothes, but a badge identifying him as a law enforcement officer hung around his neck.  Blando observed a man driving a Lexus, and after running a computer search, learned that someone had stolen the car in an aggravated robbery several months earlier.

At trial, two witnesses testified that the man in the Lexus stepped out of the car, and Blando approached him with his weapon drawn, in accordance with departmental practice.  Blando and the man began to argue, and the man told Blando not to handcuff him.  After Blando successfully cuffed one of the man's arms, the man spun around and shot Blando in the chest.  Blando eventually died from his wound.

Houston police arrested Williams, wearing one handcuff, a short time later near the scene of the shooting.  An officer read Williams his *Miranda* warnings, and after acknowledging that he understood his rights, Williams made two inculpatory statements.  The police also recovered shell casings from three different weapons near the scene of the shooting, some of which came from Williams's gun. Law enforcement investigators found Williams's fingerprints on both the stolen Lexus and Blando's unmarked Jeep Cherokee.

### B.    Procedural Background

#### 1.    State Court Proceedings

At trial, the State introduced the printout from Blando's mobile data terminal, the tape of Blando's last communications with dispatch, and the audiotaped statements that Williams made to police after his arrest.  In one audiotape, Williams discussed the carjacking of the Lexus, and in another, he discussed other extraneous violent crimes.  The State also introduced testimony

2

No. 08-70046

from the owner of the stolen Lexus and evidence that Williams had shot another individual during an unrelated robbery with the same weapon used to kill Blando.

The Defense presented no witnesses during the guilt phase of Williams's trial. In his statement to police, however, Williams stated that he did not know that Blando was a police officer, and claimed that he shot Blando in self defense because he thought Blando intended to rob him. The jury found Williams guilty of capital murder.

At the penalty phase, Williams's mother testified on his behalf. She stated that her and Williams's father had been married for twenty-five years and that she worked at a psychiatric hospital enrolling emotionally disturbed children in a school program. She also stated that Williams attended church regularly and assisted with the congregation. She further testified that Williams's family did not suffer economically, and that Williams had both parents readily available to him.

Although she reported no problems with her pregnancy or Williams's birth, Williams's mother testified that it took Williams longer than normal to learn to walk and talk. She also characterized Williams as a loner in grade school, and testified that he did not always understand instructions and that she helped him with his school work. She testified that by the time Williams reached high school, she thought that "something up there was not right."

In high school, school officials diagnosed Williams as emotionally disturbed after Williams began to exhibit behavioral problems, such as breaking into lockers and stealing items from the mall. The Defense introduced the results of an intelligence quotient ("IQ") test administered to Williams in the ninth grade, which reported that Williams had a verbal IQ of 79, a performance IQ of 65, and a full scale IQ of 70, which placed him in the "borderline" mentally retarded range. Williams, however, continued to progress from grade to grade.

3

No. 08-70046

Williams also presented evidence that after high school, he enlisted in the Navy, and received a general discharge under honorable conditions. Williams then worked for an auto-parts supplier driving a delivery truck and as a night stockman for a grocery store.

One of Williams's fellow church members also testified that Williams was a very nice, courteous individual, and a church counselor described Williams as a "delightful child, very well mannered." One of Williams's Sunday School teachers testified that Williams was quiet and reserved, while another testified that as a teenager, Williams got along well with the elder members of the congregation but did not develop relationships with other teens as well as his peers. Finally, a parent of a fellow high school classmate testified that Williams was usually quiet, and provided help when she needed assistance.

The jury found that Williams posed a future danger to commit criminal acts of violence that would constitute a continuing threat to society, and found insufficient mitigating evidence to warrant a life sentence. Accordingly, Williams was sentenced to death. The Texas Court of Criminal Appeals ("TCCA") affirmed Williams's conviction and sentence, *Williams v. State*, No. 73,796 (Tex. Crim. App. 2002), and denied his first application for state post-conviction relief. *Ex Parte Williams*, No. 50,662-01 (Tex. Crim. App. 2003). Williams did not petition the United States Supreme Court for a writ of certiorari.

In 2003, Williams filed a successive petition for state postconviction relief, alleging that he was mentally retarded and therefore ineligible for the death penalty under the Eighth Amendment as interpreted in *Atkins v. Virginia*, 536 U.S. 304, 321 (2002). Williams also argued that the Sixth Amendment barred his execution because the jury did not make a determination on his mental retardation claim. The TCCA dismissed his petition as an abuse of the writ after

4

finding that Williams failed to make a *prima facie* case of mental retardation. *Ex Parte Williams*, No. 50,662-02 (Tex. Crim. App. 2003).

### 2.    Federal Court Proceedings

### i.    Williams's Habeas Motion

In 2004, Williams filed a petition in federal district court for a writ of habeas corpus, asserting the same issues in his state petitions.  The district court dismissed most of the issues in Williams's petition on procedural grounds.  These dismissed claims included Williams's allegation of IAC at sentencing, which the district court found unexhausted and procedurally barred.

The district court, however, found that the Texas state court's determination that Williams failed to plead a *prima facie* case of mental retardation "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). Because Williams satisfied this threshold inquiry under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the district court allowed Williams to argue the merits of his *Atkins* claim.

The seven day evidentiary hearing before a magistrate judge resulted in significant evidence tending both to support and refute Williams's claim of mental retardation.[1]  The parties presented the magistrate judge with evidence from three different IQ tests recording Williams's score as either a 70 or a 71, which suggested at least borderline mental retardation, and a slew of academic achievement tests in which Williams scored in the non-mentally retarded range. Williams argued that despite the discrepancies, the magistrate judge should consider him mentally retarded, while the State argued that because of the discrepancies, the magistrate judge should not.  The State's expert produced

---

[1] For a more comprehensive summary of Williams's evidentiary hearing, see *Williams v. Quarterman*, 293 F. App'x 298, 303–07 (5th Cir. 2008) (unpublished) (per curiam).

evidence adduced during one of the IQ tests suggesting that Williams failed to put forth a good effort.[2]

The magistrate judge also heard testimony that while in the sixth, seventh, and eighth grades, Williams took a national standardized test called the Metropolitan Achievement Test and, although he scored below grade level in some subjects, he scored above grade level in others. Also while in the seventh grade, Williams demonstrated mastery in mathematics, reading, and writing on the Texas Educational Assessment of Minimum Skills, a separate achievement test. In the ninth grade, Williams passed the reading and writing sections of the Texas Assessment of Academic Skills Test, but failed the mathematics portion.

Williams also offered testimony tending to show that he suffered from adaptive deficits, specifically in the areas of self-care, home living, social and personal skills, work, and leisure. Williams introduced testimony that he failed to dress appropriately for the weather, could not keep an apartment or working car on his own, had been fired from every job he ever held, and was beaten up frequently as a child. Williams's expert on this point conceded, however, that these deficits could be attributed to behavioral abnormalities rather than cognitive deficiencies.

Williams also documented his high school years, in which school officials punished Williams for theft, truancy, and for setting a trash can on fire, and in which Williams split time between regular classes and special education classes. Williams earned generally passing, albeit low, grades in all his classes. He eventually graduated high school on time, with a grade point average of 2.19 and a class rank of 326 out of 480.

---

[2] The State's expert reported that Williams's score on a portion of the Green's Word Memory Test, which assesses an individual's level of effort on IQ tests, was lower than if he had been randomly guessing, and opined that Williams had deliberately answered some questions incorrectly.

Finally, the magistrate judge heard testimony from many people who knew Williams through various stages of his life. These witnesses included Williams's parents, his high school principal, several of his childhood friends, and those who knew him during his time in the Naval Reserves. While most described Williams as odd and several testified to his apparent inability to follow directions or rules of games, most opined that they did not believe that Williams was mentally retarded. Some, however, stated that they treated him differently because they believed he was "slow."

The magistrate judge issued a seventy-eight page report and recommendation summarizing the testimony adduced at the evidentiary hearing, and recommending that the district court reject Williams's *Atkins* claim. Conceding that Williams presented a "close call," the magistrate judge recommended that the district court grant *sua sponte* a COA on the issue of Williams's mental retardation. The district court adopted the magistrate's report and recommendation in its entirety, granting Williams a COA on his *Atkins* claim.

### ii. Williams's Federal Rule of Civil Procedure 59(e) Motion

Prior to Williams's appeal pursuant to the COA, Williams filed two additional motions. Williams first filed a Rule 59(e) motion, requesting that the district court either alter or amend its judgment. In support of his request, Williams alleged that newly discovered evidence of his actual innocence had come to his attention. Specifically, Williams claimed that his counsel had received a call from a man named David Brown, whom neither Williams nor his counsel had ever heard from before. Brown identified himself as a drug treatment sponsor in Houston, Texas, who sponsored an individual named Jervette Jenkins. According to Williams's counsel, Brown reported that Jenkins had confessed to killing Blando "under reliable circumstances." Williams has yet to locate Jenkins.

The district court denied Williams's Rule 59(e) motion. It found that even if substantiated, the Supreme Court's decision in *Herrera v. Collins*, 506 U.S. 390, 400 (1993), barred Williams's actual innocence claim. *See id.* ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")

Williams's Rule 59(e) motion also argued that his claim to actual innocence served as cause to overcome the procedural default on his IAC at sentencing claim, and that he would show that the additional evidence produced at his federal *Atkins* evidentiary hearing, but not at his state court sentencing determination, demonstrated the ineffectiveness of his counsel at trial. Finally, Williams requested a stay and abeyance to allow him to exhaust his state court remedies. The district court denied his motion on these grounds as well, stating that even if Williams could overcome his procedural default, he had failed to demonstrate entitlement to relief on his IAC claim because, although "[t]he additional evidence presented at the evidentiary hearing in th[e] habeas proceeding was far more detailed," it "added little substance to the evidence presented at trial."

### iii.   Williams's Federal Rule of Civil Procedure Rule 60(b) Motion

Later, Williams filed a Federal Rule of Civil Procedure 60(b) motion for relief from judgment, alleging that based on the State's violation of Federal Rule of Civil Procedure 45(b)(1)—which requires a party to serve the opposing party with copies of any SDT issued—the district court should vacate its denial of his petition for a writ of habeas corpus. Williams learned of the alleged Rule 45(b)(1) violations prior to the evidentiary hearing on his *Atkins* claim when a potential witness informed Williams's counsel that she had been served with an SDT that the State had not served Williams. Williams contacted the Assistant

Attorney General assigned to his case, who informed Williams that she had not issued any other SDTs.

During the evidentiary hearing, however, a witness discussed a letter she had produced in response to another SDT that the State had not disclosed to Williams. The district court allowed the letter into evidence over Williams's objection, but ordered the State to provide copies of any other SDTs that they had issued. The State produced one additional undisclosed SDT, but could not produce copies of several others, explaining that no one kept any copies of them.

Williams later learned of more than twenty additional SDTs the State had issued without providing notice to Williams. The undisclosed SDTs sought Williams's visitor logs at Harris County Jail; Williams's employment records; Williams's prison mail; and an assortment of Williams's financial, educational, and medical records.

Williams's Rule 60(b) motion requested both a vacatur of the denial of his petition for a writ of habeas corpus and an extension of time to develop evidence regarding any additional Rule 45(b)(1) violations and their resulting prejudice to Williams's case. Williams also requested that the district court (1) compel the State to provide copies of the SDTs; (2) order the State to file with the court a log of all SDTs issued; and (3) allow Williams to supplement his Rule 60(b) motion with respect to prejudice after the State complied. The district court denied the motion, holding that although the State violated Rule 45(b)(1), those violations did not justify Williams's request for relief under Rule 60(b).

### iv.    Williams's Prior Appeal Before the Fifth Circuit

Pursuant to the district court's issuance of a COA as to Williams's *Atkins* claim, Williams filed an appeal with us. *See Williams,* 293 F. App'x at 298. We conducted a thorough review of Williams's *Atkins* claim, and found that

according to the definition of mental retardation adopted by Texas state courts,[3] Williams had failed to demonstrate mental retardation and thus ineligibility for the death penalty. *See id.* at 314. We therefore affirmed the district court's denial of his petition for a writ of habeas corpus.

Williams also appealed the district court's denial of his Rule 59(e) and Rule 60(b) post-judgment motions. Williams, however, had not sought a COA on these claims, and the district court had not granted a COA *sua sponte* as it had done with his *Atkins* claim. Although we have, in the past, construed notices of appeals as requests for COAs, we found that we had no jurisdiction to consider that request because Williams had not requested a COA from the district court first. *Id.* at 315 (citing *Sonnier v. Johnson*, 161 F.3d 941, 945–46 (5th Cir. 1998)). We therefore remanded for consideration of Williams's request for a COA on the district court's denial of his Rule 59(e) and 60(b) motions back to the district court.

### v.    Williams's Request for a COA on his Rule 59(e) and 60(b) Motions Before the District Court

Upon remand, the district court denied Williams's request for a COA as to both his Rule 59(e) and 60(b) motions. As to Williams's Rule 59(e) motion, the district court reiterated that there existed no freestanding innocence claim that would warrant federal habeas relief, and that Williams's IAC claim would fail even if his actual innocence claim excused his procedural default. The district court also denied Williams's request for a stay and abeyance so that Williams could return to state court to pursue his IAC claim there, finding that Williams failed to demonstrate a colorable IAC claim that would warrant a stay. Finally, because Williams's Rule 60(b) motion did not allege the violation of any

---

[3] *See Ex parte Briseno*, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004) (defining mental retardation as "(1) 'significantly subaverage' general intellectual functioning; (2) accompanied by 'related' limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18") (footnotes omitted).

No. 08-70046

constitutional right, the district court refused to grant Williams a COA on the denial of that motion. Williams timely appealed the denial of his requests for COAs.

## II. STANDARD OF REVIEW

Williams does not have an automatic right to appeal the district court's denial of his petition for a federal writ of habeas corpus. Rather, he must first seek and obtain a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Without a COA, we lack jurisdiction to rule on the merits of his appeal. *Id.* at 335–36.

We will grant a COA if Williams makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, Williams must demonstrate "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

Our "threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* Accordingly, issuance of "a COA does not require a showing that the appeal will succeed," and therefore we "should not decline the application for a COA merely because [we] believe[] that [Williams] will not demonstrate entitlement to relief." *Id.* at 337. Because Williams faces a sentence of death, "we must resolve any doubts as to whether a COA should issue in his favor." *Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005).

## III. ANALYSIS

### A. Second or Successive Petition

AEDPA's restriction on second or successive habeas applications serves as a "gate-keeper by preventing the repeated filing of habeas petitions that attack the prisoner's underlying conviction." *Leal Garcia v. Quarterman,* 573 F.3d 214,

11

No. 08-70046

220 (5th Cir. 2009). AEDPA instructs us to dismiss any claim presented in a second or successive petition if a petitioner presented the claim in a previous application. 28 U.S.C. § 2244(b)(1). If a petitioner presents a new claim in a second or successive habeas corpus application, we must also dismiss the claim unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(A)–(B)(ii). "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." *Id*. § 2244(b)(3)(A). A petitioner's failure to seek authorization from an appellate court before filing a second or successive habeas petition "acts as a jurisdictional bar." *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000).

In *Gonzalez v. Crosby*, the Supreme Court addressed when a federal court should construe a petitioner's motion for relief from judgment pursuant to Rule 60(b) as a second or successive petition. 545 U.S. 524, 526 (2005). Noting that "[a]s a textual matter, § 2244(b) applies only where the court acts pursuant to a prisoner's 'application' for a writ of habeas corpus," the Court began its analysis by stating that "it is clear that for purposes of § 2244(b) an 'application' for habeas relief is a filing that contains one or more 'claims.'" *Id*. at 530 (citations omitted). The Court acknowledged that "[i]n some instances, a Rule

No. 08-70046

60(b) motion will contain one or more 'claims,'" and held that "[a] habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a habeas corpus application, at least similar enough that failing to subject it to the same requirements would be inconsistent with the statute." *Id*. at 530–31 (citation omitted).

After noting that "[u]sing Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts," the Court provided guidance as to when a Rule 60(b) motion advances one or more "claims." *Id*. at 531–32 (internal citations omitted). Specifically, the Court stated that "[a] motion that seeks to add a new ground for relief" advances a claim, as does a motion that "attacks the federal court's previous resolution of a claim on the merits, . . . since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id*. The Court noted, however, that "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," courts should not construe the motion as a second or successive petition. *See id.*

Although *Gonzalez* considered "only the extent to which Rule 60(b) applies to habeas proceedings under 28 U.S.C. § 2254," *id*. at 530 n.3, courts have extended *Gonzalez*'s rationale beyond the facts and procedural posture of that case. Nearly every circuit has applied the *Gonzalez* rationale to federal prisoners seeking habeas relief under § 2255.[4] Additionally, the Fourth, Eighth,

---

[4] *See, e.g., United States v. Roberts*, No. 09-60138, 2010 WL 148647, at *1 (5th Cir. Jan. 15, 2010) (per curiam); *United States v. Mouzon*, No. 09-7300, 2009 WL 4506389, at *1 (4th

No. 08-70046

and Tenth Circuits have, either explicitly or implicitly, extended the *Gonzalez* framework to other post-judgment motions, including motions to alter or amend a judgment under Rule 59(e).[5]

The Federal Rules of Civil Procedure apply to petitions for relief for habeas corpus "to the extent that they are not inconsistent with any statutory provisions or the[] rules." 28 U.S.C. § 2254 Rule 12.[6] In construing Rule 60(b) in accordance with AEDPA, the *Gonzales* Court sought to ensure that petitioners would not "circumvent[] AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Gonzalez*, 545 U.S. at 531 (citing 28 U.S.C. § 2244(b)(2)). Keeping in mind AEDPA's basic premises—avoiding piecemeal litigation and encouraging

---

Cir. Dec. 3, 2009) (per curiam); *United States v. Ramsey*, No. 09-2760, 2009 WL 3358477, at *1 (3d Cir. Oct. 20, 2009) (per curiam); *United States v. Winston*, No. 08-11369, 2009 WL 3080848, at *1 (11th Cir. Sept. 28, 2009) (per curiam); *In re Lindsey*, 582 F.3d 1173, 1174 (10th Cir. 2009) (per curiam); *Nugent v. United States*, 255 F. App'x 526, 526–27 (D.C. Cir. 2007) (per curiam) (unpublished); *United States v. Carter*, 500 F.3d 486, 489 (6th Cir. 2007); *United States v. Lam*, 228 F. App'x 739, 739 (9th Cir. 2007) (per curiam) (unpublished); *United States v. Washington*, 211 F. App'x 550, 550 (8th Cir. 2007) (per curiam) (unpublished); *United States v. Scott*, 414 F.3d 815, 816 (7th Cir. 2005).

[5] *Ward v. Norris*, 577 F.3d 925, 935 (8th Cir. 2009) ("[W]e conclude that Ward's Rule 60(b) and Rule 59 motions were improper because they were not based on a procedural defect, but rather attacked previous habeas counsel's omissions and asked for a second opportunity to have the merits determined favorably.")(citing *Gonzales*, 545 U.S. at 532 n.2); *United States v. Pedraza*, 466 F.3d 932, 934 (10th Cir. 2006) (subjecting Rule 59(e) motions to the same limitations concerning second or successive motions as those arising under Rule 60(b)); *United States v. Martin*, 132 F. App'x 450, 451 (4th Cir. 2005) (per curiam) (unpublished) ("We have reviewed the record and determine [sic] that [the defendant's] self-styled motion under Rule 59(e) is, in substance, a second motion attacking his conviction and sentence under 28 U.S.C. § 2255 (2000)."); *see generally Ochoa v. Sirmons*, 485 F.3d 538, 540 (10th Cir. 2007) (describing *Pedraza* as "holding post-judgment effort to raise new claim by motion under Rule 59(e) is likewise equivalent of second or successive petition under § 2244(b));

[6] *See also* FED. R. CIV. P. 81(a)(4) ("These rules apply to proceeding for habeas corpus . . . to the extent that the practice in those proceedings . . . is not specified in a federal statute . . . [or] the Rules Governing Section 2254 Cases, and . . . has previously conformed to the practice in civil actions.").

14

petitioners to bring all their substantive claims in a single filing—we believe that Rule 59(e) gives rise to concerns similar to those the Supreme Court addressed in *Gonzalez*, and therefore apply the *Gonzalez* framework to both of Williams's motions.

In making this determination, we recognize that differences exist between Rule 59(e) and Rule 60(b). We have held that a properly filed Rule 59(e) motion voids a previously-filed notice of appeal under Federal Rule of Appellate Procedure 4(a)(4)(A)(iv), while a Rule 60 motion does not. *Harcon Barge Co. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 666 (5th Cir. 1986) (en banc). Additionally, we have described the scope of Rule 59(e) as "unrestricted," while noting that "Rule 60(b) relief may be invoked . . . only for the causes specifically stated in the rule." *Id*. at 669. And of course, a litigant must file a Rule 59(e) motion "no later than 10 days after the entry of the judgment,"[7] while Rule 60(b) imposes the more forgiving time limit of either "one year after the entry of the judgment" or "within a reasonable time."

In practice, however, "Rules 59(e) and 60(b) permit the same relief—a change in judgment." *Harcon Barge Co.*, 784 F.2d at 669; *see also* 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D §2817 at 181–82 ("There is considerable overlap between Rule 59(e) and Rule 60."); *cf. Harcon Barge Co.*, 784 F.2d at 669 ("'[A]ny motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label.'") (quoting 9 MOORE'S FEDERAL PRACTICE ¶ 204.12[1] at 4–67 (1985)). When a litigant files a motion seeking a change in judgment, courts typically determine the appropriate motion based on whether the litigant filed

---

[7] In 2009, the Rule 59(e) was amended, and extended the ten day filing deadline to twenty-eight days. This change does not affect the substance of our analysis.

the motion within Rule 59(e)'s time limit.[8] With this in mind, we do not believe that a habeas petitioner should have the opportunity to circumvent AEDPA's jurisdictional bar on second or successive applications based on little more than the petitioner's ability to file his or her motion within 10 days of judgment.[9] *See* FED. R. CIV. P. 59(e). We will therefore apply the *Gonzalez* framework to determine whether we should construe any of Williams's motion as a second or successive habeas petition, and thus subject to AEDPA's additional jurisdictional requirements.[10]

## B.    Williams's Rule 59(e) Motion

Williams's advanced several arguments as to why the district court should alter or amend its denial of his habeas petition. Williams first argued that his

---

[8] *See, e.g.*, *United States v. Gay*, 213 F. App'x 722, 723 n.2 (10th Cir. 2007) (per curiam) (unpublished) (acknowledging that "[t]hese two rules are distinct; they serve different purposes and produce different consequences," but that "[w]hich rule applies to a motion depends essentially on the time a motion is served. If a motion is served within ten days of the rendition of [the order], the motion ordinarily will fall under Rule 59(e). If the motion is served after that time it falls under Rule 60(b)") (alteration in original).

[9] *Cf. United States v. Rich*, 141 F.3d 550, 551 (5th Cir. 1998) (stating, in a pre-*Gonzalez* case, that "[w]e agree that courts may treat motions that federal prisoners purportedly bring under Rule 60(b), but which essentially seek to set aside their convictions on constitutional grounds, as § 2255 motions. There is a trend among circuit courts to look beyond the formal title affixed to a motion if the motion is the functional equivalent of a motion under § 2255").

[10] We acknowledge that the Sixth Circuit has explicitly declined to extend *Gonzalez*'s framework to Rule 59(e) motions. *See Howard v. United States*, 533 F.3d 472, 474 (6th Cir. 2008) ("The purposes behind Rule 59(e), as well as the mechanics of its operation, counsel in favor of the nonapplicability of second-or-successive limitations."). Because the *Gonzalez* framework only applies AEDPA's second or successive limitations to post-judgment motions that advance "an asserted federal basis for relief from a state court's judgment of conviction," *Gonzalez*, 545 U.S. at 530, we are not convinced that extending the *Gonzalez* rationale to Rule 59(e) motions "would attribute to Congress the unlikely intent to preclude broadly the reconsideration of just-entered judgments." *Howard*, 533 F.3d at 472. We are more persuaded by the *Howard* dissent, which stated that while "it is clear that not every Rule 59(e) motion should be treated as a second habeas," if a party makes a Rule "59(e) motion (and files within ten days of the denial of an earlier habeas) it would be anomalous to say that the petition must be entertained even though it is based on wholly new claims that could just as well have been labeled a second petition." *Id.* at 476 (Boggs, J., dissenting). We thus join our sister circuits that have extended *Gonzalez* application to Rule 59(e) motions.

counsel had discovered new evidence that proved Williams's actual innocence of Blando's murder. Alternatively, Williams argued that the new evidence tending to show his actual innocence demonstrated that executing him would result in a "fundamental miscarriage of justice," which, in turn, should excuse the procedural default that prevented the district court from considering Williams's IAC at sentencing claim. Williams also argued that his state habeas counsel's actual conflict of interest should excuse his procedural default. Finally, Williams requested that the district court either stay his case and hold it in abeyance to allow him the chance to put forth these claims in Texas state court, or grant another evidentiary hearing.

The district court denied the motion, and upon remand from our prior panel decision, denied Williams's request for a COA as to its denial. We must now determine whether reasonable jurists would debate whether the district court abused its discretion when it denied Williams's Rule 59(e) motion. *Sw. Bell Tel. Co., v. City of El Paso*, 346 F.3d 541, 549 n.26 (noting that abuse of discretion standard applies to review of a district court's denial of a motion to alter or amend its judgment). We address each of Williams's arguments in turn.

### 1.    Williams's Actual Innocence Claim

The district court denied Williams's actual innocence claim because the Supreme Court has not definitively created a ground for federal habeas relief based on actual innocence absent an independent constitutional violation. Williams argues that because the Supreme Court has assumed, without deciding, that there may exist a freestanding claim of actual innocence, we should issue a COA on his Rule 59(e) motion. *See House v. Bell*, 547 U.S. 518, 545–55 (2006) (describing a "freestanding innocence claim" as hypothetical, but declining to resolve the question whether "freestanding innocence claims are possible"). Because Williams's actual innocence claim sought "to add a new

17

ground for relief," we must treat it as a second or successive habeas petition. *See Gonzalez*, 545 U.S. at 532.

District courts do not have jurisdiction to entertain a second or successive habeas application until the applicant "move[s] in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Because Williams failed to do so, the district court did not have jurisdiction to consider Williams's claim of actual innocence. We therefore dismiss his request for a COA on this ground.

### 2.    Williams's Procedurally Defaulted and Unexhausted IAC at Sentencing Claim

In its denial of Williams's habeas petition, the district court held that Williams had failed to exhaust and procedurally defaulted his IAC at sentencing claim. In his Rule 59(e) motion, Williams asserted several arguments for why the district court should either excuse his procedural default and hear his IAC claim, or grant a stay and abeyance to allow Williams to exhaust his claims in Texas state court. The district court held that Williams had neither demonstrated cause for excusing his procedural default nor had he demonstrated grounds for granting a stay and abeyance, and refused to grant a COA on these claims.

In *Gonzalez*, the Supreme Court held that when a post-judgment motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," the motion does not assert a "claim" that would force a court to construe it as a second or successive habeas petition. 545 U.S. at 532. More specifically, a petitioner does not make a habeas corpus claim "when he merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.* at 532 n.4. We thus hold that we have

No. 08-70046

jurisdiction to consider Williams's request for a COA on the district court's refusal to excuse his procedural default or to grant a stay and abeyance.

### i.    Characterization of Williams's IAC Claim as Procedurally Defaulted

Before reaching Williams's arguments for cause to overcome his procedural default, we note that the district court did not err when it described Williams's unexhausted IAC at sentencing claim as procedurally defaulted. "'Procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997)) (alteration in original).

Williams has already filed two petitions in Texas state court for post-conviction relief. Texas courts may not consider the merits of any subsequent application for post-conviction relief unless:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

TEX. CODE CRIM. PROC. ANN. art 11.071 § 5(a)(1)–(3) (Vernon 2007). "[A] factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable

diligence on or before that date." *Id*. § 5(e). The TCCA has grafted an additional requirement on the first prong of 11.071 § 5(a): "to satisfy Art. 11.071, § 5(a), 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence." *Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007) (internal footnotes omitted).

If Williams brought his actual innocence claim in a third application for state post-conviction relief, we find that a Texas court would not likely permit consideration of the merits. Although Brown's call and the accompanying Jenkins story did not surface until the federal district court denied Williams relief on his § 2254 petition, Williams has known all along whether he shot Blando. The prior non-existence of Brown's statement implicating Jenkins in the shooting did not prevent Williams from asserting his innocence earlier. Article 11.071 § 5(a)(1) requires that "the current claims and issues have not been and *could not* have been presented previously," and Williams certainly could have proclaimed his innocence prior to filing his first application for post-conviction relief.[11] Additionally, Williams has made no argument that the factual basis of his actual innocence claim was "not ascertainable through the exercise of reasonable diligence." TEX. CODE CRIM. PROC. ANN. art 11.071 § 5(e).

Even if Williams had demonstrated that Brown's late correspondence and the accompanying Jenkins story prevented him from asserting his actual

---

[11] *Cf. Ex Parte Frazier*, No. WR-49164-05, 2006 WL 2519750, at *1 (Tex. Crim. App. Aug. 31, 2006) (concurring statement) (in the context of a subsequent application based on witness perjury, stating "Applicant knew about and could have alleged the perjury at that time, documented his attempts to obtain an affidavit, and invoked the compulsory processes of the court, requesting a hearing at which to call the witness and place him under oath. Because the current claim could have been presented in a previously considered application, Applicant cannot now establish that the factual basis for his claim was unavailable, for purposes of a second subsequent writ application under Article 11.071, section 5(a)").

innocence claim earlier, he has failed to assert a *prima facie* constitutional violation that would require relief from his conviction. *See Ex Parte Campbell*, 226 S.W.3d at 421. Although Texas is one of the few jurisdictions to recognize freestanding claims of actual innocence, *see Graham v. Texas Bd. of Pardons and Paroles*, 913 S.W.2d 745, 749 (Tex. App—Austin, 1996, writ dism'd w.o.j.), Texas courts have held that in order to overcome the Article 11.071 § 5(a)(1) bar, an applicant must "allege sufficient specific facts that, if proven, establish a *federal* constitutional violation sufficiently serious as to likely require relief from his conviction or sentence." *Ex Parte Campbell*, 226 S.W.3d at 422 (emphasis added). Because the United States Supreme Court has yet to recognize a freestanding claim of actual innocence, we find that Williams has not demonstrated that a Texas court would hear the merits of his third application for post-conviction relief on the grounds of unavailability of the factual basis of his claim. *See House*, 547 U.S. at 554–55 (declining the opportunity to recognize a freestanding innocence claim).

Additionally, Williams cannot demonstrate that a Texas court would reach the merits of his actual innocence claim based on either of the other two grounds enumerated in Article 11.071 § 5(a). As discussed at greater length below in the context of the federal miscarriage of justice standard,[12] Williams's new evidence does not persuade us that "but for a violation of the United States Constitution no rational juror could have found [him] guilty beyond a reasonable doubt." *Id.* § 5(a)(2).[13]

---

[12] *See generally Haynes v. Quarterman*, 526 F.3d 189, 196–97 (5th Cir. 2008) ("[T]he Texas Court of Criminal Appeals has . . . construed section 5(a)(3) as analogous to the federal 'actual innocence' exception to exhaustion.") (discussing *Ex parte Blue*, 230 S.W.3d 151, 160–61 (Tex. Crim. App. 2007)).

[13] Williams also argues that because his prior state petitions were filed by an attorney laboring under a conflict of interest, it is "quite likely" that a Texas court would treat Williams's third petition as his first. Williams cites no authority for this assertion, and we have found no case or statute supporting it.

No. 08-70046

### ii. Actual Innocence of Blando's Murder as Cause for Excusing Procedural Default

Williams argues that because new evidence tending to exonerate him from Blando's murder has come to light, the district court should review his procedurally defaulted IAC at sentencing claim. "Federal habeas review of procedurally defaulted claims is barred 'unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The "miscarriage of justice" exception applies where a petitioner is "actually innocent" of either the offense giving rise to his conviction or "actually innocent" of the death penalty. *See Schlup v. Delo,* 513 U.S. 298, 326–27 (1995); *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992). Thus, to excuse procedural default, Williams must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent,'" *Sawyer*, 505 U.S. at 340 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), or, in other words, he must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538.

Williams states that a week after the district court entered judgment in his habeas petition, his counsel received a phone message from David Brown, a drug treatment sponsor in Houston, Texas, who sponsored an individual named Jervette Jenkins. Williams's counsel reported that, as part of Jenkins's rehabilitation, Jenkins told Brown that he had killed a police officer in 1999, and that he knew someone named Jeffrey was sentenced to death for the murder. Brown, in a handwritten affidavit, stated that he had no reason to lie, that he thought Jenkins had told him the truth, and that he would help the police in any

No. 08-70046

way he could. Brown does not know Williams, and to this day, no one has been able to locate Jenkins.

Brown and Williams both concede that Jenkins's purported confession contains several factual inaccuracies, such as the location of the motel where Blando was shot and the circumstances under which Blando's murder occurred, which tends to discredit Jenkins's claim of guilt.[14] In contrast, the State introduced overwhelming evidence of Williams's guilt at trial, including (1) the testimony of two eyewitnesses who stated that they observed Williams shoot Blando; (2) evidence that when police apprehended Williams, he still wore Blando's handcuffs and possessed a gun that matched the bullet extracted from Blando's body; (3) Williams's two separate confessions; and (4) evidence of Williams's fingerprints on both the stolen Lexus and Blando's unmarked Jeep Cherokee. Most tellingly, at no point has Williams himself ever described a different shooter.

The Supreme Court has sought to ensure that "the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case.'" *Schlup*, 513 U.S. at 321; *see also House*, 547 U.S. at 538 ("[I]t bears repeating that the *Schlup* standard is demanding and permits review only in the 'extraordinary' case.") (quotation omitted). Williams has not met that exacting burden. Because Williams failed to demonstrate that reasonable jurists would debate whether executing Williams would result in a fundamental miscarriage of justice, we deny Williams's request for a COA on this issue.

---

[14] Brown's affidavit reports that Jenkins stated that he shot Blando after trying to rob him, when all of the evidence, including Blando's final communications with dispatch, confirm that the altercation took place in the context of Blando's investigation of a stolen Lexus.

23

No. 08-70046

### iii.    Appellate Counsel's Conflict of Interest as Cause for Avoiding Procedural Default

Williams also argues that we should excuse his procedural default because his appointed state post-conviction counsel labored under an impermissible conflict of interest. According to Williams, the attorney whom the state trial judge appointed to prepare Williams's state habeas application was married to an attorney in the Harris County District Attorney's Office. Williams cites Texas Disciplinary Rule of Professional Conduct 1.06(b) for his argument that "a lawyer shall not represent a person" when such a conflict exists, and argues that this conflict should serve as cause for overcoming the procedural default barring federal consideration of Williams's IAC at sentencing claim.

Because "[a] state prisoner has no constitutional right to an attorney in state post-conviction proceedings," "[w]e have repeatedly held that ineffective assistance of state habeas or post-conviction counsel *cannot* serve as cause for a procedural default." *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004).[15] Despite Williams's allegations of an ethical violation on the part of his state habeas counsel, Williams cannot overcome his procedural default on this ground. Because reasonable jurists would not debate this conclusion, we deny Williams's request for a COA on this issue.

### iv.    Request for a Stay and Abeyance to Pursue an IAC Claim in Texas State Court

Alternatively, Williams also asserts that the district court should have granted a stay and abeyance so that he could exhaust his available remedies in Texas state court. We review the district court's denial of a stay and abeyance for abuse of discretion. *See Evans v. Cain*, 577 F.3d 620, 623 (5th Cir. 2009). When a petitioner brings an unexhausted claim in federal court, stay and

---

[15] *See also Callins v. Johnson*, 89 F.3d 210, 212–13 (5th Cir. 1996) ("[N]o error by habeas counsel can ever constitute cause for abusing the writ.").

abeyance is appropriate when the district court finds that there was good cause for the failure to exhaust the claim; the claim is not plainly meritless; and there is no indication that the failure was for purposes of delay. *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). Because a stay and abeyance has the potential to "frustrate[] AEDPA's objective of encouraging finality" and "AEDPA's goal of streamlining federal habeas proceedings," the Supreme Court has stated that "stay and abeyance should be available only in limited circumstances." *Id.* at 277.

Williams has not demonstrated that the district court abused its discretion. Williams offers his alleged actual innocence and the conflict under which his state habeas counsel labored as the good cause for his failure to exhaust his IAC claim in state court, but as discussed above, neither suffices. Additionally, we have held that when a petitioner is "procedurally barred from raising [his] claims in state court," his "unexhausted claims are 'plainly meritless.'" *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005). Because the district court appropriately characterized Williams's IAC claim as procedurally defaulted, reasonable jurists would not debate that the district court did not abuse its discretion when it denied Williams's request for a stay and abeyance, and we therefore decline to issue a COA on this issue.

### v. Request for Additional Discovery

Williams also moved the district court to allow him discovery and expert services to pursue his actual innocence claim in federal court. The district court denied this request, and Williams asserts that the district court abused its discretion by doing so. Because Williams failed to develop the factual basis of this claim in state court, he must now overcome AEDPA's bar against additional evidentiary hearings in federal court. Specifically, § 2254(2)(A)–(B) states that a federal court cannot grant an evidentiary hearing unless a petitioner demonstrates that:

(A) the claim relies on--

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

For the reasons discussed *inter alia*, the district court did not abuse its discretion by denying Williams's request for an evidentiary hearing. Williams does not argue for relief based on any new rule of constitutional law, and he could have developed the factual predicate for his actual innocence claim earlier through the exercise of due diligence. Additionally, as discussed above, Williams's actual innocence claim does not convince us that no reasonable factfinder would have found Williams guilty of Blando's murder. Reasonable jurists would not debate this conclusion, and we thus deny Williams's request for a COA.

### vi. Failure to Prove the Underlying IAC at Sentencing Claim

In denying his Rule 59(e) motion, the district court found that even if Williams overcame the procedural default on his IAC at sentencing claim, he had not demonstrated entitlement to relief on the merits, and we note that the district court did not err. Williams alleges a Sixth Amendment IAC claim at sentencing, but has failed to satisfy his burden under *Strickland v. Washington*, which held that in order to demonstrate IAC, "[f]irst, the defendant must show that counsel's performance was deficient," 466 U.S. 668, 687 (1984), and second, that "any deficiencies in counsel's performance [were] prejudicial to the defense." *Id*. at 692. To prove prejudice, Williams "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; in other words Williams must demonstrate "a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Because Williams challenges his death sentence, we must ask "whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id*. at 695.

Williams has not carried his burden. The district court noted that although the additional mitigating evidence presented at his federal habeas evidentiary hearing was much more detailed, it "added little substance to the evidence presented at trial," and we agree with this assessment. At sentencing, the jury heard evidence regarding Williams's alleged cognitive deficiencies, including his high school IQ test which landed him in the "borderline" range and testimony that Williams was slow, but not mentally retarded. Williams's federal evidentiary hearing resulted in the same, albeit more detailed, picture of Williams as an individual who demonstrated adaptive deficiencies that one could attribute either to cognitive or behavioral abnormalities. *See Carty v. Thaler*, 583 F.3d 244, 264 (5th Cir. 2009) (noting that the petitioner's disagreement with her trial counsel's preparation of mitigation witnesses "boils down to a matter of degrees—she wanted these witnesses to testify in greater detail about similar events and traits," and holding that the petitioner had "not shown any deficiency related to her proffer of cumulative evidence").

When compared with the evidence introduced by the State at Williams's trial—including evidence that Williams stole a car at gunpoint nine days before the murder, accosted the female owner of the car, and participated in at least one other shooting—we cannot say Williams's counsel's alleged deficiency

undermines our confidence in Williams's sentence.  Williams has thus failed to demonstrate his counsel's performance at trial was constitutionally deficient.

## C.    Williams's Rule 60(b) Motion for Relief from Judgment

Williams argues that the district court erred when it denied his Rule 60(b) motion, which alleged that the State did not serve him with copies of the SDTs the State requested, in violation of Rule 45(b)(1).  Williams argued that based on the violations, the district court should have vacated its denial of his petition for habeas corpus, and ordered the State to (1) provide Williams with copies of all the SDTs; (2) provide Williams with copies of the documents produced by the SDTs; (3) file a list of all the SDTs with the court; and (4) allow Williams additional time to supplement his motion with briefing on prejudice after the State complied with Williams's request.  Although the district court agreed that discovery violations had occurred, it concluded that Williams had not demonstrated entitlement to post-judgment relief under Rule 60, and later denied Williams's request for a COA on its denial.

Rule 60(b) enumerates several bases for granting post-judgment relief, two of which Williams asserts justify granting his motion.  Specifically, Williams argues that the State's failure to serve him justifies relief under Rule 60(b)(3), which provides relief for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," or Rule 60(b)(6), which provides relief for "any other reason that justifies relief."

As a threshold matter, we find that because Williams's Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," the motion does not assert a "claim" that forces us to construe the motion as a second or successive habeas petition.  *Gonzalez*, 545 U.S. at 532.  Accordingly, the district court had jurisdiction to consider the motion.

No. 08-70046

Rule 45(b)(1) mandates that if a subpoena "commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party." The State does not dispute that it failed to serve Williams with its SDTs in compliance with the rule, but argues that its violation does not rise to the level of misconduct justifying relief from judgment. The district court agreed with this assessment, and so do we.

To justify granting relief under Rule 60(b)(3), Williams must demonstrate, by clear and convincing evidence, "(1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). We have held that "Rule 60(b)(3) 'is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.'" *Id.* (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)).

Rule 60(b)(6) has a similarly high burden. Although we have described Rule 60(b)(6) as "'a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses,'" *id.* at 642 (quoting *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992) (internal quotation marks omitted)), we have noted that "'[r]elief under this section is granted only if extraordinary circumstances are present.'" *Id.* (quoting *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 815 (5th Cir. 1993) (internal quotation marks omitted) (alteration in original)). "'[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion.'" *Id.* at 638 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir.1996) (en banc) (citations omitted)).

29

No. 08-70046

The district court did not abuse its discretion when it refused to grant Williams's motion based on Rule 60(b)(3). Although the State candidly admits its failure to comply with Rule 45(b)(1), Williams has not demonstrated how the violation prevented him from fully and fairly presenting his case at his *Atkins* evidentiary hearing. He speculates that the SDTs may have turned up additional favorable information that the State kept from him, but the State reports that it has now sent Williams copies of the missing SDTs, most of which requested Williams's own personal records or correspondence.[16] The State sought information and documents that Williams had equal—if not greater—access to than the State. Williams has not convinced us, by clear and convincing evidence, that the discovery violations prevented him from fully and fairly presenting his case.[17]

Likewise, Williams has not demonstrated any extraordinary circumstances justifying relief under Rule 60(b)(6). Although we have no guidance as to what may constitute an extraordinary circumstance, the Supreme Court has held that a change in law after a court issues a final judgment does not qualify, *see Gonzalez*, 545 U.S. at 536, and our district courts have held that failure to consider certain extrinsic evidence, *Am. Guar, & Liab. Inc. v. Hoefner*, No. H-08-1181, 2009 WL 1011176, at *2 (S.D. Tex. Apr. 15, 2009), the inability to timely

---

[16] According to Williams, the SDTs requested documents such as his prison mail; his employment records from NAPA Auto Parts, the Trump Casino, and Kroger supermarket; his financial records; the contents of his prison cell; and his cell phone records.

[17] Williams argues that we should adopt the standard used by the Sixth Circuit, in which "'prejudice should be presumed[ ] once the moving party has shown by clear and convincing evidence that misbehavior falling into one or more of the three categories set out in Rule 60(b)(3) has occurred.'" *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1333 (6th Cir. 2006) (quoting *Jordan v. Paccar, Inc.*, No. 95-3478, 1996 WL 528950, at *8 (6th Cir. Sept. 17, 1996) (per curiam) (unpublished)). Under the Sixth Circuit's approach, "[t]he burden then shifts to the non-moving party 'to demonstrate by clear and convincing evidence that the misbehavior which occurred had no *prejudicial* effect on the outcome of the litigation.'" *Id.* (quoting *Jordan*, 1996 WL 528950, at *8). We decline to alter our own precedent in favor of the Sixth Circuit's approach.

30

file a habeas petition, *Jones v. Quarterman*, No. H-02-3963, 2008 WL 276383, at *2 (S.D. Tex. Jan. 29, 2008), and ineffective assistance of counsel, *Wells v. United States*, No. 3:07-CV-1152-G, 2007 WL 2192487, at *4 (N.D. Tex. July 27, 2007), will not suffice either.  Williams has not advanced any extraordinary circumstance rising to the level of those previously rejected, and the district court did not err by denying his Rule 60(b)(6) motion.  Reasonable jurists would not debate this conclusion, and we thus deny Williams's request for a COA.

## IV.  CONCLUSION

After reviewing Williams's petition and the record before us, we find that Williams has not justified a grant of COA on any of the issues he raises.  We find that because Williams's Rule 59(e) claim of actual innocence is properly characterized as a second or successive petition, the district court did not have jurisdiction to consider that claim.  Because reasonable jurists would not debate that the district court did not abuse its discretion when it denied Williams's Rule 59(e) and Rule 60(b) motions as to the other issues he raised, we will not issue a COA on either of his motions.

DISMISSED and DENIED.