United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 17, 2005**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 04-70047

---

IGNACIO GOMEZ,

Petitioner-Appellant,

VERSUS

DOUG DRETKE,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before DAVIS, SMITH, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ignacio Gomez, convicted in state court of capital murder, applied to this court for a certificate of appealability ("COA") after the district court had rejected his petition for a writ of habeas corpus. *Gomez v. Dretke*, No. EP-02-CV-267 (W.D. Tex. Sept. 30, 2004).

After bringing his COA application, Gomez filed a "Motion To Stay and Abate Proceedings." We grant that motion and thereby stay our consideration of Gomez's application for COA pending the exhaustion of Gomez's state court proceedings.

I.

The issues in Gomez's application for COA involve (1) claims related to Texas's lack of jury instructions on parole possibilities (*i.e.*, an

alleged Sixth Amendment Compulsory Process Clause violation); (2) claims surrounding the allegedly improper exclusion of several jury veniremembers, as well as an ineffective assistance claim complaining of his lawyer's failure to object to the exclusion of some of those veniremembers; and (3) a claim that an alleged violation of the Vienna Convention on Consular Relations ("VCCR")[1] deprived him of a fair trial.

With respect to the third claim, Gomez argues that the VCCR was violated by the admission of his confession that was obtained without first advising him of his treaty-based right to the assistance of the Mexican consulate.[2] That VCCR claim presents significant procedural difficulties and ultimately convinces us to grant a stay.

### A.

After a panel of this court denied a COA in *Medellin v. Dretke*, 371 F.3d 270, 279-80 (5th Cir. 2004) (based on procedural default), on the issue of whether a decision of the International Court of Justice ("ICJ") in *Avena*[3] requires habeas relief for petitioners whose VCCR rights were violated, the Supreme Court granted *certiorari*. *Medellin v. Dretke*, 125 S. Ct. 686 (2004). The grant of certiorari involved two questions, paraphrased as follows: (1) Are United States courts bound by *Avena*?; and (2) Even if not bound, should

---

[1] Apr. 24, 1963, [1070] 21 U.S.T. 77, 100-01, T.I.A.S. No. 6820.

[2] *See Rosales v. Bureau of Immigration & Customs Enforcement*, 2005 U.S. App. LEXIS 17246, at *7-*8 (5th Cir. Aug. 16, 2005) (per curiam).

[3] The full caption for Avena is *Case Concerning Avena and other Mexican Nationals (Mex. v. U.S.)*, 2004 I.C.J. No. 128 (Judgment of Mar. 31).

United States courts give effect to *Avena* in the interest of comity? *Id.*

After briefing in *Medellin* had been completed, however, the President advised the Attorney General that "[t]he United States will discharge its international obligations under the decision of the [ICJ in *Avena*] by having state courts give effect to the decision in accordance with general principles of comity." Medellin subsequently moved the Supreme Court to stay its proceedings pending his pursuit of relief in state court; the United States, as *amicus curiae*, supported the motion.

According to Medellin, the United States, and now Gomez, the Executive's power to undertake foreign policy initiatives, as recognized in *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003), requires Texas courts to give effect to his foreign policy wishes, even if it means abandoning normal procedural default rules. Not surprisingly, the state disagrees, and we will have to await pronouncements of the Texas courts (and perhaps of the Supreme Court) regarding the force of the President's directive.

### B.

For chronological clarity, we now shift the narrative from *Medellin* to the instant case. While his COA application was pending before this court, Gomez moved us to grant a stay and abatement of his COA application proceedings so that he could pursue state court remedies in light of the President's announcement. Gomez argues that under Texas law, he cannot seek successive state applications for habeas relief while a petition is pending in this

court unless we grant such a stay.[4]

In response, the state contends that the dual forum problem highlighted by Gomez would be equally remedied if we merely deny his COA.[5] Moreover, the state argues that the resolution of any state court proceedings is irrelevant to the COA issues presented here. According to the state, the VCCR claim is procedurally barred because Gomez allegedly abandoned it in state court. The state also argues that because the VCCR claim is treaty-based, not constitutional, 28 U.S.C. § 2253-(c)(2)[6] does not allow a COA to issue in any event.

### C.

After the filing of the motion for stay and the receipt of the state's opposition, however, the Supreme Court dismissed the writ of *certiorari* in *Medellin* as improvidently granted.

---

[4] *See Ex parte Soffar*, 143 S.W.3d 804 (Tex. Crim. App. 2004) (amending Texas's "dual forum" rule to allow a petitioner to file a subsequent state writ if the federal court with jurisdiction over a parallel writ stays its proceedings to allow the petitioner to exhaust his claims in state court).

[5] This response overlooks the procedural and limitations difficulties Gomez would face if he later wished to have the state courts' adjudication reviewed in federal court via a habeas petition. This concern is what led the Court of Criminal Appeals to amend its dual forum rule in *Soffar,* 143 S.W.3d at 805, and motivated the Court in *Rhines v. Weber*, 125 S. Ct. 1528, 1533-34 (2005) (allowing federal courts to grant stays pending state exhaustion where a federal habeas petitioner brings both exhausted and unexhausted claims).

[6] Section 2253(c)(2) provides that a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253(c)(2) (emphasis added).

*Medellin v. Dretke*, 544 U.S. ___, 125 S. Ct 2088 (2005) (per curiam). This decision was accompanied by a lengthy per curiam explanation, a concurrence advocating for granting the stay Medellin had requested, and three dissents advocating, variously, granting a stay or vacating the denial of COA and remanding to this court (which Justice O'Connor believed would stay the proceedings pending state court disposition of the new writ application in light of the Presidential directive).[7] We requested and have received additional briefing addressing the Court's disposition of *Medellin*.

### II.

Our habeas corpus jurisprudence consistently underscores the central importance of "'comity, of cooperation and of rapport between'" the parallel systems of state and federal courts. *Tucker v. Scott*, 66 F.3d 1418, 1419 (5th Cir. 1995) (quoting *Texas v. Payton*, 390 F.2d 261, 270 (5th Cir. 1968)). These concerns animate our strict adherence to the doctrine of exhaustion§§*i.e.*, the notion that federal courts will not consider a claim on habeas review if it has not been considered and finally rejected by the state courts. *See* 28 U.S.C. § 2254(b)(1)(A).

Although Gomez (arguably)[8] has previously presented his VCCR claim to the Texas state courts, the subsequent decision of the ICJ in *Avena*, coupled with the Presidential directive of February 28, 2005, counsel in favor of Gomez's re-pursuing relief in the Texas courts. Indeed, the Supreme Court has intimated that perhaps an "intervening change in

---

[7] *See Rosales*, 2005 U.S. App. LEXIS 17246, at *8-*9.

[8] As we have noted, the parties disagree as to whether Gomez abandoned his VCCR claim during his direct appeal.

3

federal law cast[ing a] legal issue in a fundamentally different light" might make necessary the re-exhaustion of state court remedies before seeking federal review. *See Picard v. Connor*, 404 U.S. 270, 276 (1971) (citing *Blair v. California*, 340 F.2d 741, 744 (9th Cir. 1965)).

Staying our proceedings pending Gomez's re-exhaustion of state remedies has the further benefit of avoiding the issuance of what might eventually be rendered an effectively advisory opinion.[9] As we have noted, the state argues that Gomez's VCCR claim is unworthy of a COA in that he fails to make a substantial showing of a *constitutional* right as required by § 2253(c)(2). In addition to that thorny question, Gomez's case raises many of the same hurdles that the Supreme Court recognized as counseling in favor of dismissing the writ of *certiorari* in *Medellin*.

Notably, even if we were to hold that Gomez's VCCR claim is entitled to a COA, there is a question whether a treaty-based violation would fall under the category of "'nonconstitutional lapses we have held not cognizable in a postconviction proceeding' unless they meet the 'fundamental defect test.'" *Medellin*, 125 S. Ct. at 2090 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Consequently, if we were to resolve these dilemmas, and yet Gomez eventually were to obtain relief through the Texas courts, our opinion will be rendered effectively meaningless.

Those considerations, among the others

highlighted by the Supreme Court in *Medellin*, even if not truly raising a concern about advisory opinions, certainly run contrary to the familiar canon of constitutional avoidance. *See, e.g.*, *Ashawander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (1936) (Brandeis, J., concurring). Staying our proceedings pending the resolution of Gomez's successive state habeas application will allow us to avoid myriad constitutional quandaries.

This maxim of constitutional avoidance rationale is particularly acute with respect to the resolution of the dispute over whether § 2253(c)(2) allows for COA's based on alleged treaty violations. Were we to adopt the state's position, the result might be that a petitioner could be entitled to habeas relief based on certain non-constitutional claims, yet were he denied such relief by the district court, he would be precluded from receiving any appellate review of that denial.[10]

The decision in *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289 (2001), further calls into question the ability of Con-

---

[9] *Cf. Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792) (declining to make recommendations on veterans' pensions because such non-binding pronouncements would be "radically inconsistent with the independence of th[e] judicial power").

---

[10] Although some commentators have argued that the wholesale removal of appellate jurisdiction over entire classes of cases is not only constitutional, but advisable, *see, e.g.,* Paul M. Bator*, Congressional Power over the Jurisdiction of the Federal Courts,* 27 VILL. L. REV. 1030, 1038 (1982); *cf. Ex parte McCardle,* 74 U.S. 506 (1868), such a robust reading of the "Exceptions Clause" of Article III has been criticized as unconstitutionally stripping the Court of its historically understood role consisting of supervisory authority over the "inferior courts" through "discretionary writs, such as mandamus, habeas corpus, and prohibition," James E. Pfander, *Jurisdiction-Stripping and the Supreme Court's Power To Supervise Inferior Tribunals*, 78 TEX. L. REV. 1433, 1441-42 (2000).

gress wholly to remove appellate jurisdiction in cases such as the present one. In *St. Cyr*, the Court held that AEDPA[11] and IIRIRA[12] did not wholly deprive the federal courts of jurisdiction to review a deportation order—even by means of a writ of habeas corpus—so as to leave St. Cyr with no opportunity for judicial review. Invoking several time-honored canons of statutory construction, the Court held that the statutes at issue did not repeal habeas review.

In the first instance, the Court noted that "[i]mplications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." *Id.* at 299. Furthermore, given the questionable constitutionality of such wholesale strips of authority, "as a general matter, when a particular interpretation of a statute invokes the outer limits of Congress' power, we expect a clear indication that Congress intended that result." *Id.*

Here, the change in statutory phraseology that underlies the state's argument does not necessarily overcome this "clear statement" burden. Before the enactment of AEDPA, petitioners needed to make a "substantial showing of [a] federal right," to obtain a certificate of probable cause. *Barefoot v. Estelle*, 463 U.S. 880, 894 (1983). AEDPA codified this language as the standard for obtaining a COA, except that it substituted the word "constitutional" for "federal." Although a strong textual argument can be made that we must give

some effect to this linguistic shift, Congress' wording falls short of the explicit "clear statement" standard articulated in *St. Cyr*.

A further concern that is avoided by a stay is the AEPDA limitations/tolling difficulties that Gomez might face were we to deny his application for a COA before resolution of his successive state court writ application. As Gomez puts it in his supplemental letter brief,

> [I]f this Court declines to stay and abey proceedings on Gomez's application for COA, the [Court of Criminal Appeals] will be barred by its own case law from considering his subsequent state application. *Soffar v. State*, 143 S.W.3d 804 (Tex. Crim. App. 2004). Then, if this Court proceeds finally to dispose of Gomez's COA application, and the [Court of Criminal Appeals] later denies relief on Gomez's subsequent state application, any attempt by Gomez to file a successive federal petition will necessarily be time-barred, since the pendency of his current federal petition is not excludable from the limitations period. *Duncan v. Walker,* 533 U.S. 167 (2001).

The principles underlying federal abstention doctrines also support a stay. In *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 501 (1941), the doctrine now familiarly known as *Pullman* abstention was born, *to-wit*, "Federal court abstention is required when state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary." ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 12.2.1, at 763 (4th ed. 2003). A stay in favor of the successive state writ application will allow the Texas courts to grapple with the difficulties of squaring Texas's notions of procedural default with the *Avena* decision and the Presidential directive. Furthermore, the Supreme Court's

---

[11] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (1996).

[12] Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. § 1252.

various opinions in *Medellin* presage that the High Court will grant a writ of *certiorari* on review from the Court of Criminal Appeals if relief is not granted by the state courts. *See Medellin*, 125 S. Ct. at 2090 n.1; *id.* at 2093 (Ginsburg, J., concurring).

## III.

In summary, we GRANT Gomez's motion; this court's consideration of Gomez's application for a COA is STAYED pending resolution of his pending state habeas corpus proceedings. We exercise our traditional deference to the state courts so that they may reconsider Gomez's VCCR/*Avena* claim in light of the President's directive and the Supreme Court's pronouncements. In so doing, we express no view as to what action the state courts should take.