# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 17, 2010

No. 08-70041

Lyle W. Cayce
Clerk

RANDOLPH MANSOOR GREER,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-cv-02563

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Randolph Mansoor Greer was convicted and sentenced to death in Texas for the 1991 murder of Walter Chmiel. The district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-70041

court denied Greer habeas relief on all claims and *sua sponte* declined to issue a Certificate of Appealability ("COA") on all claims.

Before this court, Greer seeks COA as to four issues: (1) whether his due process right to an impartial jury was denied when the trial court overruled his voir dire challenge of juror M.J., who expressed a preference for imposing the death penalty; (2) whether his due process right to an impartial jury was denied when the trial court denied his motion for a new trial after juror J.N. testified regarding inappropriate comments during jury deliberations; (3) whether his right to effective assistance of counsel was denied when his trial attorneys failed to obtain forensic expert assistance to aid in his defense; and (4) whether his rights were violated by the trial court's jury instruction, pursuant to the Texas "12-10 Rule" governing capital sentencing, regarding the effect of a "no" vote by a single juror when answering the special issues. We DENY a COA on all claims.

### I.

In 1991, at age 19, Greer was tried and convicted in Texas state court for the murder of Walter Chmiel in the course of committing and attempting to commit armed robbery. The Texas Court of Criminal Appeals summarized the facts underlying the capital murder trial as follows:

> On the morning of June 27, 1991, William Unverzagt visited the Alamo Gun Shop in Bellaire, Texas, to speak with the owner, Walter Chmiel about servicing a pistol. Upon entering the store, Unerzagt was startled by [Greer], who walked up behind him, grabbed his shoulder, put a gun to his head, and forced him to the floor of the store. Moments later Unverzagt also noticed that the glass counter and display case were broken and that a gun case at the rear of the store was empty.
>
> [Greer] ordered Unverzagt to remove several semiautomatic pistols and place them in a knapsack and to collect money from the tray behind the counter. [Greer] proceeded to guide Unverzagt through the store, instructing him to break through the glass and retrieve

No. 08-70041

additional weapons. Thereafter, [Greer] ordered Unverzagt to lie face down on the floor while he acquired several boxes of ammunition. [Greer] returned to Unverzagt and told him to get on his knees and beg for his life, and he complied. [Greer] then ordered him to get up and help him to the car with the knapsack full of guns.

After getting the bag into the car, [Greer] threatened Unverzagt and told him to run. Unverzagt ran and hid behind the corner of a building and was able to get the license number of [Greer's] car. Unverzagt ran to an adjacent business and told the owner to call the police.

Walter Chmiel was killed in the incident. Examination of the victim revealed that he had been shot once in the head, from a distance of less than 24 inches.

[Greer] was subsequently spotted by police driving the car matching the description of that given by Unverzagt and bearing the same license number. Police attempted to stop the vehicle, but [Greer] fled and lost the police. Police found the vehicle moments later and noticed various guns scattered about the ground and a stash of guns at the foot of a nearby fence.

*Greer v. State*, No. 71,533 (Tex. Crim. App. Oct. 26, 1994) (unpublished), slip op. at 1-2 ("*Greer I*"). In September 1991, Greer was indicted for the felony of capital murder in Texas state court. He was tried before a jury and convicted on all counts. Pursuant to Texas's capital sentencing scheme, after a sentencing hearing, the jury answered "Yes" to the three special sentencing issues. The trial court sentenced Greer to death. The Texas Court of Criminal Appeals affirmed Greer's conviction and sentence and denied rehearing. *Greer I* (Tex. Crim. App. Oct. 26, 1994). The United States Supreme Court denied Greer's petition for writ of certiorari. *Greer v. Texas*, 515 U.S. 1133 (1995).

In 1997, Greer petitioned for state habeas relief. In August 2002, the trial court adopted the State's proposed findings of fact and conclusions of law and

No. 08-70041

recommended that relief be denied. The Texas Court of Criminal Appeals summarily denied relief based on the trial court's findings of fact and conclusions of law. *Ex parte Greer*, No. 53,836-01 (Tex. Crim. App. Nov. 27, 2002) (unpublished).

Greer initiated federal habeas proceedings on July 11, 2003. Respondent-appellee Director, Texas Department of Criminal Justice ("Respondent"), answered and moved for summary judgment. In April 2004, the district court entered an order staying proceedings in the case pending Greer's successive state petition for habeas relief to exhaust one of his claims.[1] The Texas Court of Criminal Appeals remanded Greer's application to the state trial court for consideration, and instructed the court to conduct a live evidentiary hearing. *Ex parte Greer*, No. 53,836-02 (Tex. Crim. App. Sept. 14, 2005) (unpublished).

On remand, the state trial court rejected Greer's successive state petition and adopted the State's proposed findings of fact and conclusions of law. *Ex parte Greer*, No. 602461-B (228th Dist. Ct., Harris Cty., Tex., Oct. 10, 2006). The Texas Court of Criminal Appeals summarily adopted the state habeas court's findings and conclusions denying habeas relief. *Ex parte Greer*, No. 53,836-02 (Tex. Crim. App. Mar. 21, 2007) (unpublished).

In October 2007, the district court lifted the stay and federal habeas proceedings continued. Respondent filed a second answer and motion for summary judgment. On September 26, 2008, the district court granted Respondent's motion and denied Greer's habeas petition on four grounds: (1) the state court's factual findings regarding Greer's claims related to jurors M.J. and J.N. were entitled to AEDPA deference; (2) Greer's claims of ineffective assistance of counsel were either unexhausted and therefore procedurally barred, or were not supported with sufficient evidence; (3) Greer's claims that

---

[1] The unexhausted claim involved newly discovered evidence of improper handling and possible destruction of DNA evidence at the Houston Police Department crime lab.

the State destroyed biological evidence that might have excluded him from the crime scene were factually incorrect[2]; and (4) Greer's claims regarding Texas's jury instructions for capital sentencing were foreclosed by this court's decision in *Miller v. Johnson*, 200 F.3d 274, 288-89 (5th Cir.), *cert denied*, 531 U.S. 829 (2000).  Based on these rulings, the court *sua sponte* concluded that Greer is not entitled to a COA on his claims.[3]  Greer timely filed this application for a COA.

## II.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "[b]efore an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA . . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); 28 U.S.C. § 2253(c)(1).  A COA will issue only if Greer makes "a substantial showing of the denial of a constitutional right." *Miller-El*, 537 U.S. at 336 (citing § 2253(c)(2)).  To satisfy the standard, Greer must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Id.* (internal quotations and citations omitted); *see also Tennard v. Dretke*, 542 U.S. 274, 288 (2004).

"When the district court has rejected the constitutional claim on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, a COA should issue if the petitioner "shows, at least, that

---

[2]  Greer does not raise the destruction of evidence claim in this application for COA.

[3]  While Greer petitioned for federal habeas relief in the district court, he did not request a COA.

jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 478 (emphasis added).

The "threshold [COA] inquiry does not require full consideration of the factual or legal bases adduced in support of the claims," nor does it require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 336-37. Instead, we "conduct an overview of the issues presented and a general assessment of their merits." *Paredes v. Quarterman*, 574 F.3d 281, 288 (5th Cir. 2009) (per curiam) (citations omitted). Further, "any doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

In making a COA inquiry, we must consider that AEDPA required the district court to defer to the state court's resolution of Greer's claims, except in limited circumstances. *Foster v. Quarterman*, 466 F.3d 359, 365 (5th Cir. 2006), *cert. denied*, 127 S. Ct. 2099 (2007). Under AEDPA, federal courts may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *see Penry v. Johnson*, 532 U.S. 782, 792 (2001). The state court's factual findings are presumed correct. *Id.* § 2254(e)(1). Accordingly, this court "must presume that the state court's factual findings are correct unless [Greer] meets his burden of rebutting that presumption by clear

No. 08-70041

and convincing evidence." *Reed v. Quarterman*, 555 F.3d 364, 368 (5th Cir. 2009) (citing 28 U.S.C. § 2254 (e)(1)).

In addition, "absent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." *Orman v. Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000); *see* 28 U.S.C. § 2254(b)(1).

## III.

Greer asserts that his Sixth and Fourteenth Amendment rights to an impartial jury were violated when the trial court denied his for-cause challenge of prospective juror M.J. based on M.J.'s comments indicating some bias in favor of the death penalty.

During voir dire, the prosecutor and defense counsel asked M.J. about his views on punishment for murder generally and capital punishment specifically. The prosecutor asked the following, in relevant part:

Q:  [Prosecutor] So, the legislature has set out a range of punishment for that offense [i.e., murder] that is the widest there is in the law, from five years' probation to 99 years or life, which is the widest range there is.
    My question to you is: Can you keep your mind open to that full range of punishment for the offense of murder from as little as five years' probation to as much as 99 years or life?

A.  [M.J.] Yes.

    . . . .

Q:  In your [juror] questionnaire you say I'm strongly in favor of capital punishment as a penalty?

A:  Yes.

No. 08-70041

Q:    The next level says I would usually vote for the death penalty in a case where the law allows me to do so. . . .[4] Are you telling me that, you know, you will usually vote for the death penalty where the law allows me [sic] to do so? Are you telling me that you're so inclined to assess the death penalty as a proper punishment, that any option you had to give the death penalty, you'd do that, or can you follow the law we've talked about and answer those questions according to the evidence?

A:    No, sir. I would follow the law.

Defense counsel examined M.J. further:

Q:    [Defense Counsel] You indicated [on your juror questionnaire that] life imprisonment is more effective than capital murder [sic]. You said you disagree with that?

. . . .

A:    Yes, sir.

Q:    I'm asking why do you disagree with that?

A:    I guess I think that capital punishment is the proper punishment for capital murder.

Q:    I take it, not just the proper punishment but in your mind a just punishment.

A:    Yes.

Q:    Someone forms the specific intent to commit murder and just takes another person's life, then your feelings would be they should forfeit their own life?

A:    Yes, sir.

---

[4] On the juror questionnaire, prospective jurors answered questions regarding their views on capital punishment by selecting the statement that most closely matched their views. M.J. chose the statement in his testimony over this statement, "My decision on whether to assess the death penalty would depend upon the facts and circumstances of the case."

8

No. 08-70041

. . . .

Q:    Let me ask you this, knowing how strong your feelings are about the death penalty.    If you believe somebody intentionally committed murder, formed the specific intent to commit murder, do you feel like it would take very much to convince you they acted deliberately?

. . . .

A:    I don't think my personal view of the death penalty and how I think, you know, cases that it should be involved in, I mean, I'm not a lawyer, and I don't see cases every day, right. But I don't think my personal opinion of the death penalty is going to automatically cause me to say, well, if it's intentional, it's deliberate. I think I would give fair weight in trying to determine the difference.

Q:    Okay. Well, let's not talk about automatically. Okay. Would it affect the way you weigh the evidence?

A:    No.

Q:    You're the same person that's indicated some very strong views about the death penalty. Okay. You're the person who said, I would vote for the death penalty, usually vote for the death penalty in a case where the law allows me to do so. If you find somebody guilty in a capital case, I'm telling you right now the law's going to allow you to do so, to vote for the death penalty. And you've indicated here under oath that that [sic] is your preference?

A:    I would usually. That's what I said there, right.

Q:    That you would usually vote for it in a case where the law allows me [sic] to do so?

A:    Yes, sir.

No. 08-70041

Q:   And what I'm saying is in a capital case if you find somebody guilty, the law's going to allow you to do so. So, what this tells me is you would usually have a preference to vote for the death penalty?

A:   The law will allow me to do so if I answer these three [special issues] questions with yes.

Q:   Exactly.

A:   Is that correct?

Q:   Exactly.

A:   So, the law doesn't allow me to do that if I answer any of these with no.

. . . .

Q:   My last question to you is this: Would you still usually vote for the death penalty in a case where the law allows you to do so?

A:   Where the law allows me to do so?

Q:   Uh-huh.

A:   Yes, sir.

Defense counsel challenged M.J. for cause on the basis that M.J.'s testimony indicated he would usually vote for the death penalty in a case where the law allows him to do so, and therefore was biased against Greer. The trial court denied the challenge, stating that M.J. adequately explained that if the evidence in the case authorized him to answer the special issues questions "yes", and he felt he should answer them "yes," then the law would allow him to do so. Defense counsel then requested an additional peremptory strike. The trial court denied this request.

No. 08-70041

The Texas Court of Criminal Appeals held that, viewing the testimony as a whole, M.J. clearly expressed his ability and intentions of considering the full range of punishment and his views did not amount to bias or prejudice. It also deferred to the trial court's observations of M.J.'s demeanor during voir dire.

The district court ruled that the Texas Court of Criminal Appeals reasonably concluded that M.J.'s opinion on the death penalty would not prevent or substantially impair the performance of his duties as a juror. Citing *Adams v. Texas*, 448 U.S. 38, 45 (1980), the district court noted that the Texas Court of Criminal Appeals' conclusion was based on M.J.'s statements and the trial court's ability to observe M.J.'s demeanor. The district court concluded, therefore, that the ruling was entitled to AEDPA deference. Accordingly, the district court denied habeas relief on this claim.

The Sixth and Fourteenth Amendments guarantee an impartial jury, and the presence of a biased juror may require a new trial as a remedy. U.S. CONST. AMENDS. VI, XIV; *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Thacker v. Dretke*, 396 F.3d 607, 613-14 (5th Cir. 2005). A prospective juror's views about capital punishment are not a basis for removal for cause, however, unless those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (citation and quotation marks omitted). The question of whether a particular juror is biased, whether in regards to capital punishment or any other issue, is one of historical fact. *Id.* at 428-29; *see also King v. Lynaugh*, 850 F.2d 1055, 1058 (5th Cir. 1988) (en banc). "[S]uch a finding is based upon determinations of demeanor and credibility that are particularly within the trial judge's province." *Witt*, 469 U.S. at 428; *see also Gomez v. Quarterman*, 529 F.3d 322, 331 (5th Cir. 2008).

Specifically in the context of the Texas capital sentencing system, the juror "must be willing not only to accept that in certain circumstances death is an

11

acceptable penalty but also to answer the statutory questions without conscious distortion or bias," notwithstanding his views on capital punishment. *Adams*, 448 U.S. at 46. Viewed through the AEDPA lens, as an issue of historical fact, Greer must rebut the presumption of correctness given to the state court factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Reasonable jurists would not find the district court's assessment debatable or wrong. As the district court noted, the Texas Court of Criminal Appeals correctly relied on *Witt*'s juror bias standard. Moreover, the Texas Court of Criminal Appeals deferred to the trial court's assessment of M.J.'s testimony. As the district court noted, the demeanor evidence available to the trial court, in combination with the relatively weak evidence of bias about the death penalty, demonstrates that the trial court was reasonable to conclude that M.J. could continue to serve as a juror. *See Gomez*, 529 F.3d at 332 (citing the deference afforded to trial courts under *Witt* and denying COA on a claim of failure to exclude a venireman). Greer fails to present clear and convincing evidence to rebut the state court's factual determination regarding M.J.'s credibility. *See* § 2254(e)(1). Accordingly, we deny a COA as to this issue.

## IV.

Greer asserts that his due process right to an impartial jury was also violated when the trial court denied his motion for a new trial based on improper comments from juror J.N. regarding Greer's failure to testify and the amount of evidence presented during the penalty phase.

After Greer was convicted in the guilt-innocence phase of the trial, the State and defense presented extensive testimony in the penalty phase. Following the imposition of the death penalty, defense counsel learned that potentially improper statements were made by jury members. Greer moved for a new trial on the grounds that juror J.N. made improper comments during the

12

No. 08-70041

presentation of the State's evidence, before Greer's mitigation presentation, and during the jury's sentencing deliberations.

At the hearing on the motion, all twelve jurors testified regarding two types of statements. First, several jurors testified that J.N. commented during the jury's sentencing deliberations regarding Greer's failure to testify. J.N. testified that statements were made to the effect that the defense attorneys should have put Greer on the stand, but that he could not recall having made such statements. He (and the other jurors) testified that when the statements were made, other jurors stated that they should not discuss Greer's failure to testify and that they should consider only the facts of the case presented during the trial.

Second, J.N. admitted to other comments regarding the lengthy evidentiary presentations at the penalty phase of trial:

> Q:  [Defense Counsel] Before the State of Texas had finished presenting its evidence during the punishment stage of the trial, did you ever make a statement concerning the fact that a note should be sent to the trial judge?
>
> A.  [J.N.] Yes, sir.
>
> Q:  What was this statement?
>
> A.  I said that – and I was about like half serious, half jokingly because they had been telling us we couldn't request anything without a note to the judge. And I said that I've heard a lot of repetitious testimony about the same thing from different witnesses, all of them saying the same thing and that I was – the trial was getting lengthy. And I had a lot of work to do at work, and I said I've heard a lot of repetitious testimony and I think I ought to send a note to the judge saying we've heard enough of the repetitious testimony.

13

No. 08-70041

. . . .

Q:    [J.N.], why did you make that statement before
      you'd heard any evidence or testimony about the
      defendant during the punishment stage that you
      had heard enough?

A.    I had heard enough repetitious testimony from
      the State.   I never said anything about the
      defense.

Nine other jurors also testified that J.N. made similar comments. On cross examination, however, J.N. testified that regardless of any comments made, he waited to hear all the evidence in the case and waited to be charged on the law before considering the verdict in the case. The other jurors similarly stated that the comments did not impact their deliberations. Based on this testimony, the trial court denied Greer's motion for a new trial.

The Texas Court of Criminal Appeals concluded that J.N.'s statements had no effect on the jury's decision to recommend the death penalty because each juror testified that his or her decision was based solely upon the evidence and the law. The Texas Court of Criminal Appeals also concluded that the evidence presented at the hearing on the motion for new trial failed to demonstrate any juror misconduct. Accordingly, it held that the trial court did not abuse its discretion in overruling Greer's motion.

The district court concluded that it probably could not grant Greer relief on this ground because the claim involved complaints about the jury's deliberative process, citing *Tanner v. United States*, 483 U.S. 107 (1987). The court further concluded that even if habeas relief was available on this ground, it found reasonable the Texas Court of Criminal Appeals' conclusion that J.N.'s statements had no impact on the jury based on the facts and controlling law, as

14

it was consistent with the testimony of the jurors at the hearing and the trial judge's credibility determinations.

Courts generally will not inquire into the jury's deliberative process absent a showing of external influence on the jurors. *Tanner v. United States*, 483 U.S. 107, 120-21 (1987) ("[F]ull and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of lay people would all be undermined by a barrage of postverdict scrutiny of juror conduct." (citation omitted)). It is well-settled that jurors' testimony regarding statements made during the deliberative process cannot be used to overturn a verdict. *See id*. at 117-21.

Deliberation prior to the close of evidence, however, threatens a defendant's Sixth Amendment right to trial by an impartial jury. *United States v. York*, No. 09-40309, 2010 WL 780166, at *6 (5th Cir. Mar. 9, 2010). In evaluating a claim of juror misconduct, the law presumes that the jury is impartial and the burden rests on the defendant to show otherwise. *Id*. In addition, trial judges have broad discretion to deal with possible jury misconduct. *Id*.; *see also United States v. Sotelo*, 97 F.3d 782, 794 (5th Cir. 1996) (noting that "the trial court can better judge the mood and predilections of the jury"). The trial judge's discretion is broadest when the allegation involves internal misconduct such as premature deliberations, instead of external misconduct such as exposure to media publicity. *York*, 2010 WL 780166 at *6.

In this case, reasonable jurists would not find debatable or wrong the district court's assessment of Greer's claim related to J.N.'s "failure to testify" comments, because the remarks were said during jury deliberations. *See Tanner*, 483 U.S. at 117-21. Further, as the district court noted, the trial court was able to observe all the jurors' testimony during the hearing for the motion for new trial, including J.N.'s, that they did not consider Greer's failure to testify during deliberations. *Sotelo*, 97 F.3d at 794.

15

The district court's assessment of Greer's claim with respect to J.N.'s "too much evidence" comment, while a closer call, is also not debatable. Greer argues that the record reflects a significant risk that J.N. refused to consider mitigating evidence before imposing a death sentence, citing *Morgan v. Illinois*, 504 U.S. 719, 736 (1992). In *Morgan*, the Supreme Court held that jurors who state that they will automatically vote for the death penalty without regard to mitigating evidence should be disqualified for cause because they have formed an opinion concerning the merits of the case without basis in the evidence presented at trial. 504 U.S. at 738-39. In this case, the record does not reflect that J.N. refused to consider mitigation evidence. Instead, J.N. stated that he heard "a lot of repetitious testimony" in the penalty phase after the State presented some (but not all) evidence of Greer's prior crimes, before the defense presented mitigation evidence, and before the trial court instructed the jury.

Moreover, J.N. testified at the hearing on the motion for a new trial that he waited to hear all the evidence before deciding a sentence. While this latter statement appears self-serving, the eleven other jurors testified that they also waited to hear all evidence, and averred that J.N.'s statements did not affect their deliberations. As the Texas Court of Criminal Appeals held and the district court noted, the lack of impact on the jury undermines Greer's claims about J.N.'s comments. *See Sotelo*, 97 F.3d at 797 (noting the "ultimate inquiry" in a juror misconduct claim is: "Did the intrusion affect the jury's deliberations and thereby its verdict?") (internal citations omitted). The district court correctly deferred to the Texas Court of Criminal Appeals' conclusion. Accordingly, we deny a COA as to this claim.

## V.

Greer also argues that his Sixth and Fourteenth Amendment rights to effective assistance of counsel and due process were violated when his trial

counsel failed to obtain forensic experts to rebut the State's forensic evidence presented during trial.

During the trial, the State presented several varieties of forensic evidence implicating Greer in Chmiel's murder. First, the State presented 51 fingerprints lifted from the Alamo Gun Shop, none of which were matched to Greer's fingerprints. One of Greer's fingerprints were found on an ammunition pack, but none were found on the guns that were located in the getaway vehicle. Second, the State introduced evidence that blood splatters were found on the wall directly behind Chmiel. Yet the State's theory was that Chmiel was shot in the top of the head as he leaned over the store's counter, which would not necessarily have lead to blood spatters behind him. Third, Unverzagt testified that when he and the assailant left the gun shop, he saw blood on the assailant's hand, and that blood eventually got on Unverzagt's shirt. The state's DNA testing on this was inconclusive at the time of the trial.[5] Fourth, ballistic evidence demonstrated that shell casings recovered from the crime scene matched those found at two locations in North Carolina where, according to witness testimony, Greer discharged a pistol. Fifth, Unverzagt testified that he saw the assailant's face three times, twice only from the corner of his eye.

In Greer's first state habeas application, he argued that his trial counsel was ineffective for failing to request funding to obtain defense experts to counter the state's evidence. Within his ineffective assistance claim, he also incorporated his separate claim that his due process rights were violated when he was denied expert assistance at trial. The state habeas court found that, as a matter of law, Greer failed to show deficient performance or prejudice based on trial counsel's reasonable decisions and beliefs.

---

[5] Subsequent testing on the blood on Unverzagt's shirt during Greer's second state habeas petition revealed that the blood was Greer's.

No. 08-70041

In his federal habeas petition, Greer reasserted his ineffective assistance claims, and added a claim that he needed expert assistance because contamination at the Houston Police Department ("HPD") crime laboratory may have undermined the DNA evidence. Respondent asserted failure to exhaust in its motion for summary judgment, and the district court stayed proceedings to permit Greer to file a successive state habeas application.

In his successive state petition, Greer specifically asserted that his due process right was violated when the State mishandled and possibly destroyed DNA evidence that could have ruled him out as present at the crime scene. However, he did not reassert this claim in the context of an ineffective assistance claim. The Texas Court of Criminal Appeals remanded to the state trial court for evidentiary hearings. The trial court did not hold an evidentiary hearing; instead, it received inventory affidavits and ordered DNA testing of evidence preserved from the crime scene and fresh samples from Greer. The test results conclusively demonstrated that the blood was Greer's. Based on these test results, the trial court entered findings of fact and conclusions of law determining that a live hearing was not necessary and recommending that relief be denied. The Texas Court of Criminal Appeals adopted the recommendation.

The federal district court ruled that the portion of Greer's ineffective assistance claims regarding the problems with the HPD crime lab was procedurally defaulted because Greer failed to present them in his successive state habeas petition.[6] Moreover, the district court held that claims regarding ineffective assistance for failure to obtain expert testimony lacked evidentiary support.

Criminal defendants are entitled to the effective assistance of counsel under the Sixth Amendment. Under the *Strickland* test for ineffective

---

[6] Greer abandons on appeal the claims that he was denied due process because the crime lab destroyed potentially exculpatory evidence.

18

assistance of counsel, Greer must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 689-94 (1984). Under the first prong, "[t]o establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. With respect to the second prong, "to establish prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Wiggins*, 539 U.S. at 534; *Green v. Johnson*, 160 F.3d 1029, 1035-36 (5th Cir. 2000). "A reasonable probability is probability sufficient to undermine confidence in the outcome." *Wiggins*, 539 U.S. at 534. In the habeas context, the state court's determination of whether counsel rendered effective assistance is a mixed question of law and fact. *Strickland*, 466 U.S. at 698.

The Supreme Court has stated the importance of providing indigent defendants with experts to present their claims fairly within the adversary system. *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). Non-psychiatric experts, however, are required only if the evidence is both critical to the conviction and subject to varying expert opinion. *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993).

## A.

Respondent asserted, and the district court held, that Greer failed to exhaust the portion of his claim regarding the issues at the HPD crime lab, and therefore it is procedurally defaulted. Because the district court denied this claim on procedural grounds, under the AEDPA COA inquiry, we determine whether "[1] jurists of reason would find it debatable whether [Greer's] petition

states a valid claim of the denial of a constitutional right, and [2] jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478; *see also Moore v. Quarterman*, 534 F.3d 454, 459-60 (5th Cir. 2008). We review de novo whether a habeas petitioners's claims have been procedurally defaulted. *Coleman v. Dretke*, 395 F.3d 216, 220 (5th Cir. 2004).

Our review of the record reveals that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling. "Procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Williams v. Thaler*, --- F.3d ---, 2010 WL 1039450, at *11 (5th Cir. Mar. 23, 2010). Greer has already filed two petitions in Texas state court for post-conviction relief. His successive state habeas petition raised a due process claim that the State mishandled and/or destroyed DNA evidence that could rebut the claim that his blood was found at the murder scene. Greer did not assert, however, an ineffective assistance of counsel claim for failure to obtain an expert based on the HPD's mishandling of DNA evidence and testing. Under Texas law, the omission is fatal to this portion of Greer's ineffective assistance claim. Texas courts may not consider the merits of any subsequent application for post-conviction relief challenging the same conviction unless the application meets one of three statutory exceptions. *Id*. (citing TEX. CODE. CRIM.

No. 08-70041

PRO. art. 11.071 § 5(a)).[7]  Greer offered no arguments to the district court that his application falls within the exceptions, and he offers none here.

Moreover, Greer offers no arguments that would excuse the procedural default.  "Federal habeas review of procedurally defaulted claims is barred 'unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* (citing *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991))).  Again, Greer offered no arguments to the district court to meet this standard, and does not offer any in his application for COA.

Because the district court's procedural ruling is not debatable among reasonable jurists, we do not reach the merits of Greer's claim.  *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007).  Accordingly, we deny a COA as to this portion of the claim.[8]

---

[7] The statutory exceptions are:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under [the Texas capital sentencing scheme].

TEX. CODE. CRIM. PRO. art. 11.071 § 5(a))

[8] We note, however, that this portion of Greer's ineffective assistance claim would fail on the merits for the same reasons as the rest of his ineffective assistance claims, as explained in Section V.B.

21

**B.**

The district court also held that Greer's remaining ineffective assistance of counsel claims were speculative, because he did not offer experts who would have testified nor specifics regarding their testimony or its helpfulness.

The state habeas court's fact findings on these claims, based primarily on the affidavits of Greer's trial counsel, were: (1) trial counsel believed there was nothing objectionable in the ballistics evidence; (2) there was substantial evidence, other than ballistics and DNA evidence, to tie Greer to the scene of the crime; (3) trial counsel believed they would have lost credibility with the jury if they attempted to cast doubt on the DNA evidence; (4) trial counsel thought that use of an expert witness concerning witness reliability would have intruded on a jury's job; and (5) trial counsel did not believe the trial judge would have allowed an expert witness on witness reliability because it is the defense attorney's job to undermine the State's evidence. The state habeas court concluded, as a matter of law, that the totality of the representation was "well within an objective standard of reasonableness" and therefore effective. Moreover, the state habeas court held Greer failed to show prejudice, based on counsel's reasonable strategic decision not to present an expert witness concerning witness reliability, counsel's reasonable decision regarding the reliability of the DNA evidence, counsel's reasonable decision not to lose credibility with the jury, and counsel's reasonable belief that the ballistics evidence was not objectionable.

Essentially, Greer asserts that his counsel was ineffective for failing to investigate the forensic evidence or to obtain experts to testify at trial. A habeas applicant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). When the petitioner questions counsel's failure to call

No. 08-70041

a witness, counsel's decision is considered to be essentially strategic, and "speculations as to what [uncalled] witnesses would have testified is too uncertain." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)

While Greer is not required to prove the validity of his claims in his COA petition, *Miller-El*, 537 U.S. at 336-37, he failed to provide more than conclusory allegations to the district court. Without "the distorting effects of hindsight," *Strickland*, 466 U.S. at 689, the state court found that trial counsel's strategic decision not to challenge the DNA evidence or to provide expert testimony on the remaining forensics evidence was not deficient. Similarly, "consider[ing] the totality of the evidence before the jury," *Strickland*, 466 U.S. at 695, the state court concluded that the outcome of Greer's trial was not undermined by trial counsel's decision. Greer's federal habeas petition offered no evidence to counter these findings. Accordingly, we do not believe the remainder of Greer's ineffective assistance of counsel claims are "adequate to deserve encouragement to proceed further," *Miller-El*, 537 U.S. at 336, and we deny COA.[9]

## VI.

Finally, Greer asserts that his Eighth and Fourteenth Amendment rights were violated because the jury instructions issued at the penalty phase of his

---

[9] We note that the district court's analysis amounted to a de novo review as to whether Greer identified potential witnesses or helpful evidence. The district court should have analyzed, under AEDPA, whether the state court's "adjudication of the claims [on the merits] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial." 28 U.S.C. § 2254(d). In our COA inquiry, however, we ask whether the district court's resolution was debatable among jurists of reason. *Miller-El*, 537 U.S. at 336. In this case, the resolution of the claim is not debatable. *See Basso v. Thaler*, No. 09-70012, 2010 WL 28524, at *4 (5th Cir. Jan. 5, 2010) (unpublished) (denying COA where petitioner alleged ineffective assistance for failure to present evidence; counsel's decision was "fully informed and strategic in the sense that it is designed to avoid harm to the defense"); *cf. Buntion v. Quarterman*, 524 F.3d 664, 671-72 (5th Cir. 2008) (holding that the district court erred when it based its AEDPA analysis on authorities other than clearly established Supreme Court precedent; we then analyzed the claim under the appropriate AEDPA standard).

No. 08-70041

trial misled the jury regarding the effect of a "no" vote" by a single juror when answering the special issues questions under Texas's capital sentencing scheme.

At the time of Greer's trial, Texas's capital sentencing statute required the court to submit three special issues to the jury. *See* TEX. CODE CRIM. P. art. 37.071(b) (Vernon 1992).[10] If the jury answers "yes" to each of issues submitted, the defendant will be sentenced to death, but if the jury answers "no" to one or more issues, or is unable to answer any issue submitted, the defendant is then sentenced to life imprisonment without parole. *Id*. art. 37.071(e). Under the "12-10 Rule," the court was also required to charge the jurors that: (1) they may not answer any issue "yes" unless they agreed unanimously; and (2) they may not answer any issue "no" unless 10 or more jurors agree. *Id*. art. 37.071(d). Moreover, the court and attorneys for the State and Greer were prohibited from informing the jury of the effect of the jury's failure to agree on a special issue. *Id*. art. 37.071(g).

---

[10] The punishment special issues were:

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

TEX. CODE CRIM. P. art. 37.071(b) (Vernon 1992). The State was required to prove each issue beyond a reasonable doubt, and the jury had to return a special verdict of "yes" or "no" on each issue submitted. *Id*. art. 37.071(c).

The statute was amended effective September 1, 1991, but provided that the previous version applied to acts committed before the effective date. *See* H.R. 9, 72nd Leg., Reg. Sess. (Tex. 1991); S. 880, 72nd Leg., Reg. Sess. (Tex. 1991). In this case, Chmiel's murder was committed on June 27, 1991.

No. 08-70041

In this appeal, Greer specifically takes issue with the following provisions of the jury charge given at the close of evidence in the penalty phase:

> Each Special Issue submitted must be proved by the State beyond a reasonable doubt; therefore, before any issue may be answered "yes," all jurors must be convinced by the evidence beyond a reasonable doubt that the answer to such issue should be "Yes." If the jury unanimously determines (and only if such determination is unanimous) that the State has proved an issue beyond a reasonable doubt, then the Foreman will so record the Jury's answer to such issue by signing the finding reflecting such answer on the form provided for that purpose.
>
> You are further instructed that if any juror, after considering the evidence and these instructions, has a reasonable doubt as to whether the answer to a Special Issue should be answered "Yes," then such juror should vote "No" to that Special Issue in the jury's deliberations.
>
> If ten (10) jurors or more vote "No" as to any Special Issue, and only if (10) jurors or more vote "No," then the answer of the jury shall be "No" to that issue.
>
> . . . .
>
> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence . . . . If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and thereafter, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issues. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to that special issue under consideration.

Greer also contests the validity of the verdict form provided for each special issue, which listed the issue and the following questions:

25

No. 08-70041

ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "Yes."

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt as to the matter inquired about in this Special Issue, find and determine that the answer to this Special Issue is "No."

About fifteen minutes after the jury began its deliberations in the punishment phase, the jury sent a note to the judge stating, "[A]re we to keep deliberating until we have either: unanimous Yes or 10 or more No's to each question?" Though the transcript suggests that the trial judge received the note, there is no indication in the record of whether or how the trial judge responded. Several hours later, the jury returned a verdict in which they answered "yes" to each of the three special issues. Defense counsel requested a jury poll, and each juror answered "yes" to the verdict.

The state habeas court made the following findings of fact: (1) at the time of Greer's trial, Article 37.071 prohibited officers of the court from informing the jury about the effect of deadlock and provided that the jury must be instructed that they could not answer any of the special issues in the negative unless at least ten of them were in agreement; (2) Greer failed to object to the jury charge on the basis of the "12-10 Rule" or based on the prohibition from informing the jurors as to the effects of a deadlock; and (3) although the jury sent notes to the judge regarding the number of votes required to reach a verdict, there was no evidence of a holdout juror or of any other disagreement between the jurors. As a matter of law, the state habeas court held that, because the jury notes did not indicate a holdout juror, Greer failed to show that the statutory prohibition

26

against informing jurors of the effect of a single holdout egregiously harmed him or violated his constitutional rights.

The district court denied habeas relief on this claim without reference to or analysis of the state habeas court's decision. Instead, the district court held that Greer was not entitled to relief on these claims because he incorrectly relied upon *Mills v. Maryland*, 486 U.S. 367 (1988). In *Mills*, the Supreme Court held that capital sentencing schemes requiring the jury to unanimously find the existence of any mitigating factor before giving that factor any weight violated the Eighth Amendment. Rather, the Supreme Court held, each juror in a capital sentencing scheme must be free to give any mitigating evidence any weight that juror deems appropriate in weighing mitigating against aggravating evidence. 486 U.S. at 377-81. In this case, as the district court noted, the trial court specifically instructed the jury that any juror's reasonable doubt as to whether the answer to a special issue should be "yes" required a "no" vote. The district court also reasoned that this court has held that *Mills* is not applicable to the Texas capital sentencing scheme, citing *Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000).

We hold that reasonable jurists would not find that the district court's assessment of Greer's claim on this issue is debatable. At the outset, we note that the district court cites to *Miller*, where we rejected petitioner's argument that Article 37.071(g)'s prohibition against informing the jury about the effect of a deadlock was unconstitutional. 200 F.3d at 288-89. Greer, however, does not make the same argument. Indeed, in his appellate brief, Greer acknowledges that the Supreme Court has rejected the argument that the Eighth Amendment is violated when the trial court fails to provide an instruction as to the consequence of jury disagreement. *See Jones v. United States*, 527 U.S. 373, 380-83 (1999) (addressing challenge to jury instructions under the Federal Death Penalty Act). Instead, Greer argues that the

27

instruction at his trial is unconstitutionally prohibitive because it creates the risk that a juror would be misled into believing that, although she desires to vote "no" on a special issue, she must acquiesce as a matter of law and vote "yes" if nine other jurors do not agree with her.

Nonetheless, the district court's analysis correctly rejects Greer's claim. As the district court noted, we have previously rejected habeas claims of the 12-10 Rule's unconstitutionality. *See, e.g.*, *Hughes v. Dretke*, 412 F.3d 582, 593-94 (5th Cir. 2005). The petitioner in *Hughes*, like Greer, specifically challenged the 12-10 Rule's potential to confuse jurors who are inclined to vote "no" to the special issues. *Id.* at 594. As here, the district court in *Hughes* recognized that petitioner's claim advocated an extension of *Mills*, and rejected such an extension based on the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). *Id.*[11]

Even if the claim were not *Teague*-barred, we would reject the substantive argument that the 10-12 Rule violates the rule of *Mills*. *Jacobs v. Scott*, 31 F.3d 1319, 1328-29 (5th Cir. 1994). Distinguishing the Texas 12-10 Rule from the sentencing system the Supreme Court rejected in *Mills*, we noted that, "[u]nder the Texas system, *all* jurors can take into account *any* mitigating circumstance. One juror cannot preclude the entire jury from considering a mitigating circumstance." *Id.* at 1329 (emphasis added). Therefore, no COA will issue on this claim.

---

[11] Under *Teague*, new rules of constitutional criminal procedure will not be announced on federal habeas review unless an exception applies. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301.

No. 08-70041

## VII.

After a review of the record, we conclude that Greer has not made a substantial showing of the denial of a constitutional right regarding any of his claims. Accordingly, we DENY his request for a COA as to all claims.

COA DENIED; APPLICATION DISMISSED.